UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

PHILIP ABRAMO,                          :

                Petitioner,    :    12 Civ. 1803 (JSR)(HBP)

      -against-               :    REPORT AND
                                             RECOMMENDATION
UNITED STATES OF AMERICA,               :

               Respondent.     :

----------------------------------X


      PITMAN, United States Magistrate Judge:


      TO THE HONORABLE JED S. RAKOFF, United States District

Judge,


I.  Introduction


      Pro se petitioner Philip Abramo moves pursuant to 28

U.S.C. § 2255 to vacate, set aside or correct his sentence on

several grounds (Petition, filed on March 9, 2012 (Docket Item 1)

("Petition") at 1).

      Pursuant to a written plea agreement, petitioner pled

guilty on July 9, 2009 to one count of conspiracy to commit

murder, one count of conspiracy to commit loansharking and one

count of receiving the proceeds of an extortion in violation of

18 U.S.C. §§ 1959(a)(5), 371 and 880, respectively.  As part of

the agreement, petitioner also agreed not to appeal or collater-

ally attack any sentence less than the stipulated sentence of eighteen years.  On October 7, 2009, the Honorable Jed S. Rakoff, United States District Judge, sentenced petitioner to a term of fifteen years and six months' imprisonment.  Petitioner is currently incarcerated pursuant to that judgment.

The Government opposes the Petition on the grounds that the claims are barred by the waiver in the plea agreement, procedurally barred and, in any event, lack merit.

For the reasons set forth below, I respectfully recommend that the Petition be dismissed.

II. <u>Background</u>

    A.   Petitioner's
        <u>Underlying Offenses</u>[1]

Petitioner was one of numerous individuals arrested in October 2000 for participating in a nationwide criminal enterprise, known as the Decavalcante Organized Crime Family.  <u>United States v. Riggi</u>, 541 F.3d 94, 96 (2d Cir. 2008).  At various times, petitioner was a soldier and a capo in the family (Ex. A to the Government's Opposition, dated May 21, 2012 ("Opp'n")

_____

[1]The facts set forth herein relate solely to the counts underlying the superseding information to which petitioner pled guilty on July 9, 2009.

2

¶ 8).  From August 1989 to September 1989, petitioner conspired to murder Frederick Weiss, a member of the Decavalcante Organized Crime Family who was suspected of cooperating with the Government (Ex. A to Opp'n ¶ 13).  Petitioner attended meetings to plan the murder and surveyed the area around Weiss's home, where Weiss was murdered.  United States v. Riggi, supra, 541 F.3d at 97.  In addition, from 1990 to 2000, petitioner allegedly ran and re-ceived proceeds from a large scale loansharking operation, through which he made extortionate extensions of credit (Ex. A to Opp'n ¶¶ 14-16).

      B.   Procedural History

            1.   Initial Indictment,
                  Jury Trial
                  And Appeal

      The indictment initially filed against petitioner charged him with several racketeering acts, including murders, conspiracies to murder, loansharking and conspiracy to commit securities fraud (Ex. B to Opp'n at 12).

      On June 4, 2003, a jury convicted petitioner of con-spiring to make and collect extortionate extensions of credit, and of participating in and conspiring to participate in a racketeering enterprise, the activities of which included four

murder conspiracies and securities fraud.  <u>United States v.</u>
<u>Riggi</u>, <u>supra</u>, 541 F.3d at 101.  The Honorable Michael B. Mukasey,
United States District Judge (now retired), sentenced petitioner
to a term of life imprisonment on June 8, 2006.  <u>United States v.</u>
<u>Riggi</u>, <u>supra</u>, 541 F.3d at 101.

　　　　Petitioner appealed his conviction arguing, <u>inter alia</u>,
that the admission in evidence of eight plea allocutions from
non-testifying conspirators violated his Confrontation Clause
rights under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).  On
September 4, 2008, the United States Court of Appeals for the
Second Circuit concluded that the admission of the plea allocu-
tions had been plain error.  <u>United States v. Riggi</u>, <u>supra</u>, 541
F.3d at 102.  Accordingly, petitioner's conviction was vacated
and the matter remanded to Judge Rakoff.

　　　　2.　　Plea Agreement
　　　　　　　<u>And Allocution</u>

　　　　Following the Second Circuit's decision, petitioner
signed a written waiver of indictment and consented to the filing
of a superseding felony information (Ex. C to Opp'n at 7).  The
superseding information charged petitioner with one count each of
conspiracy to commit murder, conspiracy to commit loansharking

4

and receiving the proceeds of an act of extortion (Ex. A to Opp'n).

Petitioner and the Government entered into a written plea agreement on July 9, 2009, pursuant to which petitioner pled guilty to all counts in the superseding information (Ex. D to Opp'n).  The plea agreement also contained the following stipulations:

- The United States Sentencing Guidelines ("Guidelines") in effect as of November 1, 2008 would govern petitioner's sentence.

- Petitioner had five criminal history points and a criminal history category of III.

- The appropriate Guidelines sentence was a term of imprisonment of eighteen years.

- Petitioner would not file a direct appeal or collaterally attack any sentence of eighteen years or less, even if the court employed a Guidelines analysis different from that stipulated to in the agreement.

- The sentence would be determined by the court, notwithstanding the parties' agreement.

- If "the conviction" resulting from petitioner's plea was vacated for any reason, the Government could prosecute petitioner for any offense that was not time-barred as of July 9, 2009; the subsequent lapse of any limitations period would not constitute a defense.

(Ex. D to Opp'n at 3-8).  Petitioner reserved the right to argue that the sentence should be reduced by sixty-one months, which petitioner served in connection with a conviction for securities

5

fraud entered in the Middle District of Florida (Ex. D to Opp'n at 5).

On July 9, 2009, petitioner entered a plea of guilty to the superseding information before Judge Rakoff (Ex. C to Opp'n). Inga L. Parsons, Esq., represented petitioner at the plea allocution.  Petitioner had first retained Parsons, and when his funds were exhausted, Parsons was appointed by Judge Rakoff to represent petitioner pursuant to the Criminal Justice Act (Ex. C to Opp'n at 5).  Petitioner testified at the plea allocution that he was satisfied with Parsons' representation of him, that he had read and discussed the counts in the superseding information with counsel and that he understood the charges contained therein (Ex. C to Opp'n at 5-6).  Petitioner also stated that he had read and discussed the terms of the plea agreement with counsel, understood the terms and agreed to the terms (Ex. C to Opp'n at 12-13).  Judge Rakoff expressly informed petitioner that, pursuant to the terms of the plea agreement, petitioner was barred from appealing or collaterally attacking any sentence of eighteen years or less; petitioner expressed his understanding of that waiver provision (Ex. C to Opp'n at 14).  After completing the allocution required by Fed.R.Crim.P. 11, Judge Rakoff accepted the plea and found that petitioner had "knowingly and voluntarily" entered his guilty plea (Ex. C to Opp'n at 18).

3.   Sentencing

Judge Rakoff conducted a sentencing hearing on October 7, 2009.  At that time, Parsons alerted Judge Rakoff to an issue that petitioner had raised with her following the plea allocution.  Parsons argued that the 2008 Sentencing Guidelines provided for a significantly higher sentence for the offense of conspiracy to commit murder than the 1989 Guidelines in place at the time the Weiss murder occurred, and that application of the 2008 Guidelines violated the Ex Post Facto Clause (Ex. E to Opp'n at 3-7).  Specifically, she stated:  "Had I known that at the time of the plea I don't know how we would have done that in terms of what was the guideline range but I suspect that if that was known to the probation department that may have made a difference with respect to [petitioner's] guidelines" (Ex. E to Opp'n at 3-4).  The Government conceded that the murder conspiracy Guidelines in effect in 1989 were "quite different" from the 2008 murder conspiracy Guidelines (Ex. E to Opp'n at 7-8).  Nonetheless, the Government argued that petitioner's contention was moot because the Guidelines were only advisory, and 18 U.S.C. § 3553 required the application of the Guidelines in effect on the date of sentencing (Ex. E to Opp'n at 6).

7

Judge Rakoff found that the Guidelines were not "operating in a way that [gave] the Court any meaningful guidance as to what sentence it should impose" (Ex. E to Opp'n at 11). Nevertheless, because he was required to determine which Guidelines applied, Judge Rakoff applied the 2008 Guidelines.  However, Judge Rakoff also noted that the Guidelines calculation played a minor role, if any, in his sentencing decision and that the sentence would be the same whether he applied the 1989 or 2008 Guidelines.

> Frankly, I am of the view if it were in my power to not resolve this difference between what the government says the guideline calculation is here and what the defense says the government [sic] calculation is here, I would embrace that opportunity because I don't think it's going to make the slightest difference in my sentence and I say that because what we've just discussed seems to me to show that the guidelines are not operating in the manner in which they were intended to operate in this situation and that therefore they to [sic] do not afford the Court meaningful guidance as to what sentence should be imposed.
>
> However, I think I am required, nonetheless, to make a calculation or a determination. . . .  So I will adopt the government's view of the guidelines which would be to a range that is above 18 years and therefore is capped at 216 months.
>
> But, I repeat, I have to frankly say on this record that I don't think it's going to have material affect on my sentence and I don't think it is going to be a material affect if I had calculated it at 78 to 97 [months.]

(Ex. E to Opp'n at 10-11 (emphasis added)).

Petitioner's counsel then raised a second issue and urged Judge Rakoff to reduce petitioner's sentence by the amount of time petitioner had already served on the Florida securities fraud conviction (Ex. E to Opp'n at 16-27).  At petitioner's counsel's request, Martin Klotz, Esq. -- petitioner's former trial counsel -- also addressed the court on behalf of petitioner on this same matter (Ex. E to Opp'n at 12-16).  Among other things, Klotz argued that the crime in Florida involved an offense similar to the crimes underlying the racketeering charges in New York (Ex. E to Opp'n at 13).  Petitioner's counsel also noted that the other conspirators had received credit for sentences served on related offenses (Ex. E to Opp'n at 25, 31-32).  The Government distinguished petitioner's case from those of the other conspirators by noting that petitioner had continued to commit crimes even while serving his sentence for the Florida conviction (Ex. E to Opp'n at 8).

Judge Rakoff found that petitioner "should receive some concurrency but not total concurrency" for the time he served on the Florida sentence (Ex. E to Opp'n at 35).  He focused primarily on the nature of the offenses themselves in calculating petitioner's sentence:

> [A]t any rate the main point I wanted to make, if we
> just look at this in the most narrow way putting even
> aside -- and I don't see why I should put aside -- but

9

putting aside the loan sharking, just looking at the
conspiracy to murder, why is that not an offense that
calls for a[n] 18 year penalty?  What am I missing
here?  Your colleague says, well, there are people who
are more central to the murder.  The government says,
well, this guy was more central than the defense as-
serts.  But the question I am asking is central or less
central, what crime more calls out for deterrence, for
punishment, for the most severe penalties that the
court allows than getting together to murder a human
being?

(Ex. E to Opp'n at 25).

Notwithstanding petitioner's prior agreement to a
sentence of eighteen years' imprisonment, Judge Rakoff granted
petitioner two and a half years' credit for the time he had
already served in connection with the Florida conviction and
sentenced petitioner to a term of imprisonment of fifteen and
one-half years (Ex. E to Opp'n at 35, 38-39).

4.   Direct Appeal

Despite the plea agreement's appeal/2255 waiver provi-
sion, petitioner appealed his sentence to the Second Circuit.
Petitioner challenged the application of the 2008 Guidelines to
the murder conspiracy charge.  In an effort to overcome the
waiver provision, petitioner argued that ex post facto rights
should not be waivable and, in any event, that the waiver re-
sulted from his ignorance of those rights.  United States v.
Riggi, 649 F.3d 143, 147 (2d Cir. 2011).

10

The Second Circuit enforced the waiver provision and dismissed petitioner's appeal.  With respect to petitioner's contention that the protection afforded by the prohibition against ex post facto laws should not be waivable, the Court of Appeals noted that although "[a] violation of a fundamental right warrants voiding an appeal waiver," not all "meaningful errors" warrant such relief.  649 F.3d at 147.  "The decisive consider-ations dividing these [results] appear to be the nature of the right at issue and whether the sentence 'was reached in a manner that the plea agreement did not anticipate.'"  649 F.3d at 148, quoting United States v. Liriano-Blanco, 510 F.3d 168, 174 (2d Cir. 2007).  The court went on to find that the protection against ex post facto was not so fundamental that it could not be waived and that the fifteen and one-half year sentence that Judge Rakoff had imposed was entirely consistent with the plea agree-ment.

With respect to petitioner's second argument -- that petitioner's waiver of his right to appeal ex post facto viola-tions was void because it was not knowing and intelligent -- the court found that, at least in this case, the claim was subsumed within the ineffective-assistance claim petitioner had reserved for a Section 2255 motion.

11

It is unclear, however, why a hypothetical claim based on "ignorance of existing rights" is not subsumed by a claim based on ineffective assistance of counsel, which can survive an appeal waiver "where the claim concerns 'the advice [the defendant] received from counsel.'"  Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (quoting United States v. Torres, 129 F.3d 710, 715-16 (2d Cir. 1997)).  A lawyer's obligations during plea negotiations include informing the client of constitutional rights that affect the plea.  Thus, a defendant claiming ignorance of existing constitutional rights during plea negotiations is in effect arguing that the advice given by his counsel was inadequate or incorrect.  Such a deficient performance is one element of an ineffective-assistance claim.  Id. at 140 (referencing Strickland v. Washington, 466 U.S. 668, 688, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).  Were a separate "ignorance of existing rights" claim readily available, a defendant could litigate the same issue twice.

That concern is particularly acute here.  Abramo claims "ignorance of existing rights" in this appeal, but he has carefully reserved an ineffective-assistance claim for a habeas petition.  Abramo Br. at 28.  (And he goes further, arguing that the "specter" of the ineffective-assistance claim "should give additional weight to finding the waiver clause unenforceable" in this case.  Id.)  We cannot say that a claim alleging ignorance of existing rights will always be subsumed by a claim of ineffective assistance, but on these facts Abramo's alleged ignorance of his ex post facto rights is relevant only in an ineffective-assistance claim (which is not raised here, and as to which we express no view).

649 F.3d at 150.

Accordingly, the Court of Appeals found the waiver of appellate rights to be enforceable, albeit without prejudice to an argument in a 2255 petition that the waiver is void because it is the product of ineffective assistance.

12

5.    The Instant
      Petition

Petitioner timely filed the Petition on March 9, 2012.
As discussed in more detail below, petitioner argues that his
waiver of a Section 2255 motion should not be enforced because he
did not receive the effective assistance of counsel throughout
the plea bargaining process.  Petitioner goes on to complain of
the following errors:  (1) counsel was ineffective for failing to
discover that the application of the 2008 Guidelines to the
murder conspiracy charge, which he stipulated to in the plea
agreement, violated the Ex Post Facto Clause of the Constitution;
(2) counsel was ineffective for failing to object when petitioner
allocuted to receiving the proceeds of an extortion in 1990 only
and such conduct was not made a crime until 1994; (3) the plea
agreement contained an incorrect calculation of his criminal
history category ("CHC"); (4) Judge Rakoff failed to afford
petitioner sufficient credit for the sentence imposed in the
Middle District of Florida and (5) counsel was ineffective for
failing to object to Judge Rakoff's application of Booker to his
pre-Booker offenses.

The Government argues that petitioner's waiver of his
right to file this Petition is valid, and in any event, that
petitioner's claims lack merit.  The Government contends that

13

counsel was not ineffective because Judge Rakoff applied the proper Guidelines. Specifically, the "one-book" rule, set forth in U.S.S.G. § 1B1.11(b)(3), permitted Judge Rakoff to apply the version of the Guidelines in effect when the last of petitioner's offenses occurred. Moreover, counsel did not err during the plea allocution because petitioner had agreed to proceed by informa- tion, and the information set forth the relevant date range for the crime of receiving the proceeds of an extortion as 1990 to 2000. In any event, the Government notes that petitioner has failed to show prejudice resulting from counsel's alleged errors. Furthermore, the Government argues that the calculation of petitioner's CHC in the plea agreement is correct and that petitioner does not state a legitimate basis for challenging Judge Rakoff's discretion during sentencing to grant only partial concurrence. Last, the Government asserts that petitioner failed to allege any prejudice resulting from counsel's alleged ineffec- tiveness in permitting the application of <u>Booker</u>.

Petitioner replied to the Government's opposition on August 29, 2012 ("Reply") (Docket Item 8), asserting essentially the same grounds that he raised in the Petition. On May 8, 2013, petitioner sought the appointment of counsel, specifically seeking that Parsons be appointed to represent him in connection with the instant Petition (Letter from Philip Abramo to the

14

Honorable Jed S. Rakoff, United States District Judge, dated May
8, 2013, at 3 ("[A]t this time, having waived all conflicts of
interest, is the Petitioner allowed to hire Ms. Parsons as his
attorney in this matter.")).[2]  Oddly, petitioner makes no attempt
to reconcile his request to have Parsons appointed to represent
him with his claims that Parsons' prior representation of him was
ineffective and that she failed to provide him with correct
advice in multiple respects.

On May 17, 2013, petitioner submitted a letter of
supplemental authority, citing the Supreme Court's decision in
Dorsey v. United States, --- U.S. ---, 132 S. Ct. 2321, 2332
(2012), and noting that the "Ex Post Facto Clause, Art. I, § 9,
cl. 3, prohibits applying a new Act's higher penalties to pre-Act
conduct."  Petitioner subsequently submitted a second letter of
supplemental authority, citing Peugh v. United States, --- U.S.
---, 133 S. Ct. 2072 (2013).  In that case, the Supreme Court
found an ex post facto violation where a defendant had been
sentenced under more draconian Guidelines first promulgated after
he committed the crime.  Peugh v. United States, supra, 133 S.
Ct. at 2088.  On August 22, 2013, petitioner requested, inter

_____

[2]By letters dated May 7 and May 31, 2012, petitioner had
previously sought the appointment of counsel, which I denied for
failing to state an appropriate basis (Order, dated June 11, 2012
(Docket Item 5)).

alia, an evidentiary hearing, but failed to identify any factual
dispute that would warrant a hearing (Petition Requesting the
Court to Compel the Government to Re-File Their Response in
Opposition to Petitioners 18 U.S.C. § 2255 Motion, dated August
22, 2013, at 4).

III.  Analysis

    A.    Petitions Under
         28 U.S.C. § 2255

      A prisoner in federal custody may move to vacate, set
aside or correct his sentence only "upon the ground that the
sentence was imposed in violation of the Constitution or laws of
the United States, or that the court was without jurisdiction to
impose such a sentence, or that sentence was in excess of the
maximum authorized by law, or is otherwise subject to collateral
attack."  28 U.S.C. § 2255(a).  "Because collateral challenges
are in 'tension with society's strong interest in the finality of
criminal convictions, the courts have established rules that make
it more difficult for a defendant to upset a conviction by
collateral, as opposed to direct, attack.'"  Yick Man Mui v.
United States, 614 F.3d 50, 53 (2d Cir. 2010), quoting Ciak v.
United States, 59 F.3d 296, 301 (2d Cir. 1995), abrogated on
other grounds by, Mickens v. Taylor, 535 U.S. 162 (2002).  To

16

succeed on a collateral attack of a final judgment under Section 2255, petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (inner quotation marks and citations omitted); accord Sanders v. United States, 1 F. App'x 57, 58 (2d Cir. 2001); Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000); Rodriquez v. United States, 11 Civ. 2957 (TPG), 2013 WL 6171618 at *1 (S.D.N.Y. Nov. 25, 2013) (Griesa, D.J.).

Moreover, where, as here, the "motion and the files and records of the case conclusively show that the petitioner is entitled to no relief," a court need not hold an evidentiary hearing.  28 U.S.C. § 2255(b); see also Lake v. United States, 465 F. App'x 33, 34-35 (2d Cir. 2012) (An evidentiary "hearing is not required when, 'viewing the evidentiary proffers . . . and record in the light most favorable to the petitioner,' it is clear that the petitioner has failed to establish a 'plausible claim of ineffective assistance of counsel.'" (citation omit-ted)).  An evidentiary hearing would be especially futile here because petitioner has not even alleged that he would have rejected the plea agreement, but for counsel's errors.  See Zandi v. United States, 460 F. App'x 51, 54 (2d Cir. 2012) (Hearing not

17

required where no objective evidence corroborates petitioner's claim that he would have accepted plea offer if communicated to him.); <u>Puglisi v. United States</u>, 586 F.3d 209, 218 (2d Cir. 2009) ("On the present record, a hearing based on the proffers of proof set forth in appellant's supporting papers would be fruitless because the appellant has neither stated that he would have accepted a plea if properly advised by trial counsel nor proffered objective evidence in support of such a statement.").

Finally, because petitioner is appearing <u>pro</u> <u>se</u>, the Court construes the Petition liberally and interprets it to raise the strongest arguments that it suggests.  See <u>Erickson v. Pardus</u>, 551 U.S. 89, 84 (2007); <u>Green v. United States</u>, 260 F.3d 78, 83 (2d Cir. 2001); <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999).

        B.    Enforceability
            Of Petitioner's
            Right to File
            <u>A Collateral Attack</u>

As a preliminary matter, the Government argues that the Petition is barred because the waiver provision in the plea agreement expressly prohibits petitioner from seeking relief under 28 U.S.C. § 2255.  Petitioner argues that the waiver is not valid because it was not knowing and voluntary as a result of his

18

counsel's ineffectiveness throughout the plea bargaining process. Accordingly, I consider first petitioner's claim that his waiver should not be enforced.

    1.   <u>Applicable Law</u>

        a.   Knowing And
            <u>Voluntary Waiver</u>

"It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." <u>United States v. Djelevic</u>, 161 F.3d 104, 106 (2d Cir. 1998).  This principle was recently reaffirmed by the Second Circuit in <u>United States v. Riggi</u>, <u>supra</u>, 649 F.3d at 146 ("Waivers of the right to appeal a sentence are presumptively enforceable."), <u>quoting</u> <u>United States v. Arevalo (Vigil)</u>, 628 F.3d 93, 98 (2d Cir. 2010); <u>accord</u> <u>Grafton v. United States</u>, CV-09-1551, 2011 WL 4793162 at *2 (E.D.N.Y. Aug. 24, 2011).  A knowing and voluntary waiver of the right to litigate pursuant to Section 2255 is also valid and enforceable.  <u>See</u> <u>Frederick v. Warden, Lewisburg Corr. Facility</u>, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement.") (citation omitted); <u>Garcia-Santos v. United States</u>, 273 F.3d 506, 508 (2d Cir. 2001) ("We find no error in the District Court's deter-

mination that [petitioner's] plea agreement was entered into knowingly and voluntarily, and with awareness of his waiver of appeal and collateral attack."); <u>Powell v. United States</u>, 10 Cr. 243 (VM), 12 Civ. 7089 (VM), 2013 WL 2284907 at *3 (S.D.N.Y. May 9, 2013) (Marrero, D.J.); <u>Garafola v. United States</u>, 909 F. Supp. 2d 313, 323 (S.D.N.Y. 2012) (Koeltl, D.J.); <u>Calderon v. United States</u>, 05 Civ. 3443 (SAS), 2006 WL 662332 at *2 (S.D.N.Y. Mar. 15, 2006) (Scheindlin, D.J.).

A waiver is "knowing" if the "defendant fully under-stood the potential consequences of his waiver." <u>United States v. Monzon</u>, 359 F.3d 110, 116 (2d Cir. 2004) (inner quotation marks and citation omitted); <u>accord</u> <u>United States v. Coston</u>, 737 F.3d 235, 237 (2d Cir. 2013); <u>United States v. Cook</u>, 722 F.3d 477, 481 (2d Cir. 2013); <u>United States v. Rosario</u>, 300 F. App'x 58, 58-59 (2d Cir. 2008).  In determining whether a defendant understood the consequences of a waiver,

> the district court [is] entitled to rely upon the
> defendant's sworn statements, made in open court
> . . . , that he understood the consequences of his
> plea, had discussed the plea with his attorney, knew
> that he could not withdraw the plea, understood that he
> was waiving his right to appeal a sentence below [the
> agreed upon time], and had been made no promises except
> those contained in the plea agreement.  <u>See</u> <u>Blackledge</u>
> <u>v. Allison</u>, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed.
> 2d 136 (1977) ("The subsequent presentation of conclu-
> sory allegations unsupported by specifics is subject to
> summary dismissal, as are contentions that in the face
> of the record are wholly incredible."); <u>see</u> <u>also</u> <u>United</u>

20

> States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000)
> (per curiam) (rejecting the defendant's assertion that
> he did not knowingly waive his right to appeal in his
> plea agreement because that contention was inconsistent
> with his statements during the plea colloquy), cert.
> denied, 531 U.S. 1001, 121 S. Ct. 502, 148 L. Ed. 2d
> 472 (2000); United States v. Torres, 129 F.3d 710, 715
> (2d Cir. 1997) ("A defendant's bald statements that
> simply contradict what he said at his plea allocution
> are not sufficient grounds to withdraw the guilty
> plea.").

United States v. Hernandez, 242 F.3d 110, 112-13 (2d Cir. 2001).

Accordingly, "[w]here the record clearly demonstrates that the

defendant's waiver of h[is] right to appeal a sentence within an

agreed Guidelines range was knowing and voluntary, that waiver is

enforceable." United States v. Monzon, supra, 359 F.3d at 116,

quoting United States v. Salcido-Contreras, 990 F.2d 51, 51-52

(2d Cir. 1993) (per curiam) and United States v. Rivera, 971 F.2d

876, 896 (2d Cir. 1992).


            b.    Ineffective
                  Assistance
                  Of Counsel[3]


     The presumption that a waiver is enforceable may be

overcome by "an attack on the validity of the process by which

the waiver has been procured, here, the plea agreement."

---

[3]A habeas petitioner may raise a claim of ineffective assis-
tance in a Section 2255 petition even though no ineffective
assistance claims were raised on direct appeal. Yick Man Mui v.
United States, supra, 614 F.3d at 55.

<u>Frederick v. Warden, Lewisburg Corr. Facility</u>, <u>supra</u>, 308 F.3d at

195-96, <u>citing</u> <u>United States v. Hernandez</u>, <u>supra</u>, 242 F.3d at

113-14.

> [W]aivers do not prevent defendants from "seeking
> relief from the underlying plea where" . . . "[a]n
> ineffective assistance of counsel claim . . . concerns
> the advice the defendant received from counsel," <u>Parisi
> v. United States</u>, 529 F.3d 134, 138 (2d Cir. 2008)
> (internal quotations omitted) (emphasis added), because
> "the very product of the alleged ineffectiveness'
> cannot fairly be used to bar a claim of ineffective
> assistance of counsel[,]" <u>United States v. Hernandez</u>,
> 242 F.3d 110, 113-14 (2d Cir. 2001) (internal quota-
> tions omitted).  In particular, the Second Circuit has
> distinguished between "challenging the attorney's role
> in shaping the defendant's bargaining position[,]
> [which] cannot avoid the waiver, [and] challenging the
> attorney's <u>advice</u> about the bargaining position, by
> connecting the knowing and voluntary nature of the
> defendant's plea decision with the attorney's conduct,"
> which does avoid the waiver.  <u>Parisi</u>, 529 F.3d at
> 138-39 (emphasis original.)

<u>Liriano v. United States</u>, 08 Civ. 5568 (DAB), 08 Civ. 5634 (DAB),

05 Cr. 253 (DAB), 03 Cr. 227 (DAB), 2009 WL 2972519 at *3

(S.D.N.Y. Sept. 16, 2009) (Batts, D.J.).

The mere assertion of an ineffective-assistance-of-

counsel claim is not sufficient to overcome the presumption that

a waiver is enforceable.  <u>United States v. Monzon</u>, <u>supra</u>, 359

F.3d at 118-19 ("We reject the notion that an appeal waiver

becomes unenforceable simply because a defendant 'claims' . . .

ineffective assistance of counsel.").  The claim of ineffective

assistance must relate to the plea process and be meritorious to

void an otherwise valid waiver.  See United States v. Jimenez,
106 F. App'x 92, 93 (2d Cir. 2004) (A "claim of ineffective
assistance is waived when . . . it attacks the sentence itself
and not the underlying plea agreement that supported the sen-
tence." (citation omitted)); United States v. Monzon, supra, 359
F.3d at 118-19 ("The appeal waiver would be unenforceable if the
record of the criminal proceeding revealed that the claim that
the waiver was the result of ineffective assistance of counsel
was meritorious."); United States v. Djelevic, supra, 161 F.3d at
106 (A claim that counsel was ineffective "not at the time of the
plea, but at sentencing" cannot survive a waiver.).  Otherwise,
"a defendant who secured the benefits of a plea agreement by,
inter alia, knowingly and voluntarily waiving the right to appeal
could escape the fairly bargained-for appeal waiver by the simple
expedient of asserting an ineffective-assistance-of-counsel claim
that had no merit." United States v. Oladimeji, 463 F.3d 152,
155 (2d Cir. 2006) (inner quotation marks and citation omitted).

        Thus, a claim of ineffective assistance that is unre-
lated to the plea bargaining process does not provide a basis on
which to invalidate a waiver of the right to challenge the con-
viction by appeal or by a Section 2255 proceeding.  Liriano v.
United States, supra, 2009 WL 2972519 at *3.  "Similarly, coun-
sel's alleged deficiencies at sentencing are also barred by

Petitioner's knowing and voluntary waiver of the right to collat-
erally attack the sentence." Baer v. United States, 11-CR-104S,
12-CV-490S, 2013 WL 2250667 at *5 (W.D.N.Y. May 22, 2013), citing
United States v. Hernandez, supra, 242 F.3d at 114 and United
States v. Cano, 494 F. Supp. 2d 243, 248-49 (S.D.N.Y. 2007)
(Chin, then D.J., now Cir. J.); see also United States v.
Djelevic, supra, 161 F.3d at 107 (If courts "were to allow a
claim of ineffective assistance of counsel at sentencing as a
means of circumventing plain language in a waiver agreement, the
waiver of appeal provision would be rendered meaningless.").

          A claim that counsel was ineffective during the plea-
bargaining process must be evaluated under the now-familiar,
two-part test set forth in Strickland v. Washington, 466 U.S. 668
(1984).  See Hill v. Lockhart, 474 U.S. 52, 57-58 (1985) (Strick-
land analysis applies to plea process); Ramzan v. United States,
11 Civ. 1191 (NRB), 06 Cr. 456 (NRB), 2012 WL 3188847 at *4
(S.D.N.Y. Aug. 6, 2012) (Buchwald, D.J.); Hernandez v. United
States, 280 F. Supp. 2d 118, 122 (S.D.N.Y. 2003) (Koeltl, D.J.).
Under Strickland v. Washington, supra, 466 U.S. at 686-87:

          The benchmark for judging any claim of ineffectiveness
          must be whether counsel's conduct so undermined the
          proper functioning of the adversarial process that the
          trial cannot be relied on as having produced a just
          result.

                    *    *    *

                         24

A convicted defendant's claim that counsel's assistance
was so defective as to require reversal of a conviction
. . . has two components.  First, the defendant must
show that counsel's performance was deficient.  This
requires showing that counsel made errors so serious
that counsel was not functioning as the "counsel"
guaranteed the defendant by the Sixth Amendment.
Second, the defendant must show that the deficient
performance prejudiced the defense.  This requires
showing that counsel's errors were so serious as to
deprive the defendant of a fair trial, a trial whose
result is unreliable.  Unless a defendant makes both
showings, it cannot be said that the conviction . . .
resulted from a breakdown in the adversary process that
renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid

v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hernandez v.

United States, 202 F.3d 486, 488 (2d Cir. 2000); Hurel-Guerrero

v. United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v.

United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v.

Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).  Because the test is

conjunctive, a habeas petitioner's failure to satisfy either

prong requires that the challenge to the conviction be rejected.

Strickland v. Washington, supra, 466 U.S. at 697.

As to the first requirement, petitioner must show that

"counsel's representation fell below an objective standard of

reasonableness."  Strickland v. Washington, supra, 466 U.S. at

688.  Courts "must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional

assistance; that is, the [petitioner] must overcome the presump-

25

tion that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, supra, 466 U.S. at 689 (inner quotation marks omitted).  Further, "'[i]n assessing the attorney's performance, a reviewing court must judge [counsel's] conduct on the basis of the facts of the particular case, viewed as of the time of counsel's conduct, and may not use hindsight to second-guess [counsel's] strategy choices.'" Garafola v. United States, supra, 909 F. Supp. 2d at 330, quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

With respect to the second prong, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, supra, 466 U.S. at 694.  "[I]n the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's er-rors, he would not have pled guilty and would have proceeded to trial." United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005), citing Hill v. Lockhart, supra, 474 U.S. at 59; accord United States v. Doe, 537 F.3d 204, 214 (2d Cir. 2008). "'[W]here the alleged error of counsel is a failure to investi-gate . . ., the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence

26

would have led counsel to change his recommendation as to the plea.'" United States v. Garcia, 57 F. App'x 486, 489 (2d Cir. 2003), quoting Hill v. Lockhart, supra, 474 U.S. at 59; accord United States v. Logan, 845 F. Supp. 2d 499, 512 (E.D.N.Y. 2012). "In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different." Garafola v. United States, supra, 909 F. Supp. 2d at 331, citing United States v. Workman, 110 F.3d 915, 920 (2d Cir. 1997); accord McNaught v. United States, 646 F. Supp. 2d 372, 378 (S.D.N.Y. May 13, 2009) (citation omitted) (Koeltl, D.J.).  Importantly, "[n]o prejudice exists when a plea agreement lessens the severity of the sentence the defendant would face if convicted at trial." Feliz v. United States, 01 Civ. 5544 (JFK), 00 Cr. 53 (JFK), 2002 WL 1964347 at *7 (S.D.N.Y. Aug. 22, 2002) (Keenan, D.J.) (cita-tion omitted); see Moran v. United States, 96 Civ. 3657 (CSH), 93 Cr. 275 (CSH), 1998 WL 54616 at *5 (S.D.N.Y. Feb. 10, 1998) (Haight, D.J.).

        Finally, "[i]n considering an ineffective counsel claim [arising out of a petitioner's decision to plead guilty], a court need not accept a petitioner's uncorroborated, self-serving testimony as true." Grullon v. United States, 99 Civ. 1877 (JFK), 2004 WL 1900340 at *6 (S.D.N.Y. Aug. 24, 2004) (Keenan,

D.J.); <u>see</u> <u>also</u> <u>United States v. Gordon</u>, 156 F.3d 376, 380-81 (2d
Cir. 1998) (<u>Strickland</u>'s "but for" test requires "some further
'objective evidence'" beyond a petitioner's "self-serving,
post-conviction testimony." (citation omitted)); <u>Potter v. Green</u>,
04-CV-1343, 2009 WL 2242342 at *15 (E.D.N.Y. July 24, 2009)
("Petitioner's only evidence showing that 'but for' counsel's
error, Petitioner would not have pled guilty is Petitioner's
affidavit; however this statement alone is insufficient.").

> 2.   Application of
>      the Foregoing
>      <u>Legal Principles</u>

Petitioner argues that he did not "knowingly" agree to
the waiver because his counsel was ineffective.  He alleges that
counsel failed to advise petitioner of the correct Guidelines and
of potential <u>ex post facto</u> issues (Petition at 14).  Specifi-
cally, petitioner alleges:

> In this case, the defendant's waiver of his right
> was not done knowingly in that he was agreeing to a
> guideline that was not the correct guideline manual and
> in violation of his rights under the Ex Post Facto
> Clause.  Accordingly, he was giving up such rights
> operating under ignorance and mistake of the legal
> consequences and constitutional rights in that the
> guideline calculation was incorrect and that the use of
> the later guidelines would result in more than a tri-
> pling of the guideline range in violation of the Ex
> Post Facto Clause.  The failure of counsel to know the
> correct guideline and the ex post facto issue at the
> time of entering the plea agreement raised the issue of

ineffective assistance of counsel and the very product
of the alleged ineffectiveness cannot be used as to bar
[sic] a claim of ineffective assistance of counsel.

*     *     *

Defendant contends that he was denied his consti-
tutionally guaranteed right to the effective assistance
of counsel when the defendant's counsel failed to dis-
cover a second Ex Post Facto violation concerning Count
Three of the Plea Agreement, "Receiving the Proceeds of
an Extortion," in violation of 18 [U.S.C. §] 880, in or
about 1990 through in or about 2000.

During the Plea allocution on July 9, 2009, before
Judge Rakoff, the defendant stated on page 16 of the
pleading transcript as to Count Three, "I accepted the
proceeds from an extortion in the Southern District of
New York in 1990."

Unknown to the defendant's counsel and not pre-
served at either the district court or the Appellate
Court, the crime to which the defendant pled guilty to
[sic], "receiving the Proceeds of an Extortion," was
not enacted until September 13, 1994, four years after
the date to which the defendant allocuted to having
committed the offense, which would make the defendant
actually innocent of the offense as charged.

(Petition at 14, 16 (emphasis in original)).

Even reading the Petition liberally, the foregoing are

petitioner's only attempts to connect the claimed ineffective

assistance to the plea agreement's waiver provision.  Thus,

unless petitioner succeeds in establishing one of the foregoing

ineffective assistance claims or otherwise establishes that his

consent to the plea agreement was not knowing and voluntary, the

plea agreement's waiver provision is enforceable.

29

a.   Knowing
     <u>And Voluntary</u>

At the outset, there is simply no support in the record
for petitioner's self-serving statement that the waiver "was not
knowingly, competently or intelligently" entered into (Petition
at 14).  The record clearly demonstrates that petitioner stated
he understood the consequences of the plea agreement's
appeal/2255 waiver provision and that he had voluntarily entered
into the agreement.  During petitioner's plea allocution, peti-
tioner acknowledged, under oath, that he had discussed the terms
of the plea agreement with Parsons, and pursuant to those discus-
sions, that he understood the terms (Ex. C to Opp'n at 12-13).
Petitioner also expressed his satisfaction with counsel's repre-
sentation of him (Ex. C to Opp'n at 5).  Petitioner affirmed that
he had not been threatened, induced or coerced into signing the
plea agreement (Ex. C to Opp'n at 14-15).  Most importantly,
while conducting petitioner's plea allocution, Judge Rakoff
clearly informed petitioner of the consequences of the
appeal/2255 waiver provision in the plea agreement:  "under your
agreement with the government, you have agreed that if the sen-
tence is 18 years or less, you will not file any appeal or col-
lateral attacks on the sentence;" petitioner acknowledged his
understanding in response (Ex. C to Opp'n at 14).  On this basis,

Judge Rakoff found that petitioner's plea was entered "knowingly and voluntarily" (Ex. C to Opp'n at 18).

Accordingly, the transcript of petitioner's plea allocution establishes that petitioner discussed the terms of the plea agreement with counsel and that he understood the plea agreement's waiver provision.  See United States v. Monzon, supra, 359 F.3d at 118 ("[T]here is nothing in the transcript of [petitioner's] plea allocution to support her contention that she did not understand her Plea Agreement commitment to give up the right to appeal her sentence."); Vernon v. United States, 03 Civ. 7859 (RWS), 2004 WL 1354115 at *3 (S.D.N.Y. June 17, 2004) (Sweet, D.J.) ("[T]he transcript of [petitioner's] plea allocution clearly shows that his waiver of his right to appeal or to collaterally attack his sentence was made voluntarily and knowingly.").

> b.   Ineffectiveness
>       As To Ex Post
>       Facto Rights

Petitioner next argues that counsel improperly failed to advise him of ex post facto violations, which impaired his ability to make an informed waiver.

The parties stipulated in the plea agreement to the applicability of the Guidelines in effect as of November 1, 2008

(Ex. D to Opp'n at 3).  Allegedly unbeknownst to petitioner at the time the plea agreement was entered, the Guidelines applicable to the murder conspiracy count that were in effect on the date of petitioner's offense -- 1989 -- allowed for a significantly lower sentence -- 78 to 97 months -- than the sentence called for by the 2008 Guidelines (Petition at 15).  Second, petitioner contends that he allocuted to the offense charged in Count Three -- receiving the proceeds of an extortion -- in 1990 only (Ex. C to Opp'n at 16).  However, the crime of receiving the proceeds of an extortion was not enacted until September 1994 (Petition at 16).

For the reasons set forth below, neither claim provides a basis to invalidate the waiver.

i.   Application of
2008 Guidelines

"'[T]he Ex Post Facto Clause forbids the [government] to enhance the measure of punishment by altering the substantive 'formula' used to calculate the applicable sentencing range.'" Peugh v. United States, supra, 133 S. Ct. at 2088, quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 505 (1995).  Thus, an ex post facto violation occurs if a defendant is sentenced under an amended Guidelines provision, which provides for a higher sen-

32

tencing range, than the relevant Guidelines provision in effect
at the time of the offense.  Peugh v. United States, supra, 133
S. Ct. at 2081-82; see also United States v. Riggi, supra, 649
F.3d at 146 n.2 ("A 'sentencing court must generally apply the
version of the Guidelines that is in effect at the time of sen-
tencing,' . . . but if the court determines that the application
would violate the Ex Post Facto Clause, it 'shall use the Guide-
lines Manual in effect on the date that the offense of conviction
was committed.'"), quoting United States v. Rodriguez, 989 F.2d
583, 587 (2d Cir. 1993) and U.S.S.G. § 1B1.11(b)(1).  Neverthe-
less, in "cases in which the record makes clear that the District
Court would have imposed the same sentence under the older, more
lenient Guidelines that it imposed under the newer, more punitive
ones . . ., the ex post facto error may be harmless."  Peugh v.
United States, supra, 133 S. Ct. at 2088 n.8 (citation omitted).

        Even assuming counsel's performance "fell below an
objective standard of reasonableness," petitioner cannot show
with "reasonable probability that . . . the result of the pro-
ceeding would have been different," Strickland v. Washington,
supra, 466 U.S. at 688, 694, and cannot, therefore, establish the
prejudice necessary to sustain an ineffective-assistance claim.

        Judge Rakoff directly addressed the ex post facto issue
during the sentencing hearing, and after noting the discrepancy

33

in the 1989 and 2008 murder-conspiracy Guidelines, stated that
the disparity would not make "the slightest difference in [peti-
tioner's] sentence" (Ex. E to Opp'n at 10).

> I have to frankly say on this record that I don't think
> [adopting the 2008 Guidelines] is going to have mate-
> rial affect on my sentence and I don't think it is
> going to be a material affect if I had calculated it at
> 78 to 97 [months, as called for by the 1989 Guide-
> lines;] it doesn't seem to me that the [G]uidelines in
> this situation are operating in a way that gives the
> Court any meaningful guidance as to what sentence it
> should impose.

(Ex. E to Opp'n at 11).  Indeed, in considering petitioner's
direct appeal, the Second Circuit observed that Judge Rakoff's
"explicit consideration of the phenomenon that arguably impli-
cates the Ex Post Facto Clause, and the decision to discount or
disregard the provision said to create the violation, may [have]
eliminate[d] any 'significant risk' of a more severe sentence."
United States v. Riggi, supra, 649 F.3d at 148 n.4.  Hence, to
the extent any error occurred, it occurred without prejudice to
petitioner.  See Peugh v. United States, supra, 133 S. Ct. at
2088 n.8 (ex post facto error is harmless when record demon-
strates that the sentencing judge would have imposed the same
sentence under either Guideline).

Petitioner's case is entirely distinguishable from
Dorsey v. United States, supra, 132 S. Ct. 2321, on which peti-
tioner relies.  In that case, the defendant was convicted of

34

selling 53 grams of crack cocaine in March 2007 when the offense
carried a ten-year statutory mandatory minimum.  After the date
of the sale that gave rise to the conviction, but before defen-
dant's sentencing, Congress amended the sentencing provisions
applicable to the sale of crack cocaine such that the statutory
mandatory minimum sentence for the sale of 53 grams of crack
cocaine was reduced from ten years to five years.  The trial
judge sentenced petitioner to the ten-year mandatory minimum,
expressing the belief that he was required by law to apply the
sentencing provisions that were in effect on the date of the
offense.  The Supreme Court reversed, holding that although the
Ex Post Facto Clause prohibited the application of laws that
increased the criminal penalty and were enacted after conduct in
issue, the Clause did not prohibit the application of subse-
quently enacted laws that reduced the penalty.  132 S. Ct. at
2332.  Accordingly, the trial judge's belief that he was bound by
the older, more draconian sentencing provisions, was error and
the matter was remanded for resentencing.

          Dorsey has no applicability here.  As noted above,
Judge Rakoff did not impose a fifteen and one-half year sentence
on petitioner because he believed he was bound to do so by the
2008 Guidelines.  To the contrary, Judge Rakoff stated that he
would have imposed the same sentence regardless of which version

of the Guidelines were applicable (Ex. E to Opp'n at 10).  More-
over, unlike the statutory provisions at issue in <u>Dorsey</u>, the
Guidelines provisions relevant to petitioner's case became more
severe, not less severe.  Thus, <u>Dorsey</u> is factually and legally
distinguishable from petitioner's case and provides no succor to
petitioner.

      In addition, even if petitioner was not aware of the <u>ex
post facto</u> issue at the time the plea was entered, he certainly
became aware of it when the sentencing hearing occurred.  Yet,
petitioner made no attempt to withdraw his plea of guilty at that
time and does not even allege that he would have rejected the
plea deal had he been aware of counsel's alleged error.  <u>See
United States v. Arteca</u>, <u>supra</u>, 411 F.3d at 320 (Petitioner must
show that he would not have pled guilty, absent counsel's er-
rors.).

      Thus, because petitioner cannot show prejudice result-
ing from counsel's alleged failure to provide correct advice
concerning the applicable Guidelines, he has failed to establish
a Sixth Amendment violation on this theory and has failed to
establish a basis to invalidate the plea agreement's waiver
provision.

ii.   Count Three

The exact nature of petitioner's second specification of ineffective assistance asserted as a basis to invalidate the appeal/2255 waiver provision is somewhat unclear.  As noted above, petitioner states the claim as follows:

Defendant contends that he was denied his consti-tutionally guaranteed right to the effective assistance of counsel when the defendant's counsel failed to dis-cover a second Ex Post Facto violation concerning Count Three of the Plea Agreement, "Receiving the Proceeds of an Extortion," in violation of 18 [U.S.C. §] 880, in or about 1990 through in or about 2000.

During the Plea allocution on July 9, 2009, before Judge Rakoff, the defendant stated on page 16 of the pleading transcript as to Count Three, "I accepted the proceeds from an extortion in the Southern District of New York in 1990."

Unknown to the defendant's counsel and not pre-served at either the district court or the Appellate Court, the crime to which the defendant pled guilty to [sic], "receiving the Proceeds of an Extortion," was not enacted until September 13, 1994, four years after the date to which the defendant allocuted to having committed the offense, which would make the defendant actually innocent of the offense as charged.

(Petition at 14, 16 (emphasis in original)).

Petitioner appears to be claiming that his counsel was ineffective for not recognizing that his plea to the offense of receiving the proceeds of extortionate conduct was defective because he admitted to such conduct in 1990 only -- four years prior to the conduct being criminalized.

Assuming, without deciding, that counsel's alleged lapse constitutes ineffective assistance, it does not invalidate the appeal/2255 waiver provisions of the plea agreement.  As explained above, only ineffective assistance with respect to the process by which a plea agreement is reached will invalidate a waiver provision in a plea agreement.

> [T]he refusal to apply a waiver of ineffective assis-
> tance of counsel only allows appellate review of the
> constitutionality of the process by which the plea
> agreement was consummated.  If the constitutionality of
> that process passes muster, the plea agreement's waiver
> would bar any consideration by the appellate court of
> issues that fall within the scope of that waiver.

United States v. Hernandez, supra, 242 F.3d at 114; accord United States v. Cano, supra, 494 F. Supp. 2d at 248; see also Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) ("[A]lthough challenging the attorney's role in shaping the defendant's bar-gaining position cannot avoid the waiver, challenging the attor-ney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does." (emphasis in original)); United States v. Djelevic, supra, 161 F.3d at 107 (appeal waiver provision in plea agreement precludes appellate claim that coun-sel was ineffective at sentencing); Garafola v. United States, supra, 909 F. Supp. 2d at 329 (Koeltl, D.J.) (appeal/2255 waiver provision in plea agreement precludes claims of ineffective

38

assistance except to extent such claims would invalidate the plea
agreement).  Thus, the type of ineffective assistance that can
serve to invalidate an appeal/2255 waiver must necessarily pre-
date the execution of the plea agreement; an appeal/2255 waiver
in a plea agreement could not, as a matter of logic, be the
product of ineffective assistance rendered after the plea agree-
ment was executed.

       Petitioner's claim here arises out of conduct occurring
after the negotiation and execution of the plea agreement, i.e.,
his allocution that he received the proceeds of extortionate
conduct in 1990 only.[4]  However, in the absence of evidence that
petitioner advised his counsel prior to his plea that his conduct
concerning this count of the information ended in 1990, it is
impossible to conclude that counsel's performance was deficient
with respect to the negotiation of the plea agreement.  Peti-
tioner discloses no facts concerning his pre-plea discussions
with his counsel; nor does he claim that he would have sought
different terms or would not have entered into the plea agreement
had he known that receiving the proceeds of extortionate conduct
was not a federal crime until 1994.  Because a 2255 petitioner

---

       [4]The transcript of petitioner's plea confirms that the plea
agreement was negotiated and executed before petitioner's guilty
plea to Count Three (Ex. C to Opp'n at 12, 16).

bears the burden of proof, <u>United States v. Ashton</u>, Crim. No. 90-27-02, 2013 WL 1700925 at *2 (D.D.C. Apr. 18, 2013), the absence of evidence connecting counsel's alleged deficiency on the plea negotiation process precludes this allegation of ineffective assistance from invalidating the plea agreement's appeal/2255 waiver provision.[5]

Thus, assuming, without deciding, that counsel's failure to recognize the deficiency in petitioner's allocution to Count Three did constitute ineffective assistance, the plea agreement's appeal/2255 waiver provision precludes that failure from serving as a basis for relief.

Admittedly, it is possible to view this specification of ineffective assistance as asserting that counsel improperly failed to advise petitioner, during the plea negotiation process, that receiving the proceeds of extortionate conduct was not a federal crime until 1994 and that the plea was, therefore, not knowing and voluntary.  However, even if I were to construe the claim in this manner, there was no prejudice to petitioner.  If

---

[5]The Government argues that there is no <u>ex post facto</u> issue with respect to Count Three of the superseding information because the dates set forth in the information establish the date of the offense, notwithstanding petitioner's allocution to the contrary.  This argument is contrary to the Second Circuit's decision in <u>United States v. Kilkenny</u>, 493 F.3d 122, 128 (2d Cir. 2007).

petitioner had known of this issue prior to the entry of his
plea, the Government would have merely substituted another of-
fense, to which petitioner would have pled guilty.  In return for
the plea agreement, the Government agreed to drop the original
indictment which charged petitioner with multiple murders and
participation in multiple murder conspiracies over the course of
many years.  See generally United States v. Riggi, supra, 541
F.3d at 95-100.  His exposure on each murder count was life; each
murder conspiracy count carried a ten year sentence.  18 U.S.C.
§ 1959(a).  If the deficiency in Count Three of the superseding
information had been identified during the plea negotiation
process, the Government, no doubt, would have merely substituted
a different offense.  Given the breadth of petitioner's alleged
criminal activities and the Government's conclusion that it was
appropriate for petitioner to plead to a sentencing exposure of
18 years, it is unlikely that the Government would have simply
deleted Count Three of the superseding information.  Thus, if the
ex post facto issue with respect to Count Three had been raised
during the plea negotiation process, it is unlikely that the
outcome of the case would have changed in any material respect,
and, therefore, it is unlikely that counsel's failure to identify
the issue resulted in any prejudice to petitioner.  As explained

above, the absence of prejudice is fatal to a claim of ineffective assistance.[6]

Accordingly, I conclude that the ineffective assistance of counsel asserted in connection with petitioner's plea to Count Three of the superseding information does not invalidate the appeal/2255 waiver provision in the plea agreement. As explained above, the claim is unrelated to the negotiation of the plea agreement. In addition, if it is deemed to be related to the negotiation of the plea agreement, the purported deficiency did not result in any prejudice to petitioner.[7]

Because petitioner's claims that counsel was ineffective during plea negotiations are without merit, and the plea

_____

[6]In light of petitioner's pro se status, I also note that if petitioner succeeds in overturning his conviction for receiving the proceeds of extortionate conduct, the consequences of the victory may be worse than the consequences of a defeat. As noted in § II.B.2, above, the plea agreement provides that if petitioner succeeds in attacking a conviction resulting from his plea, all charges that were timely as of the date of petitioner's plea agreement can be reinstated. Thus, if petitioner succeeds in vacating the conviction on Count Three, he may be facing multiple murder charges.

[7]Although petitioner has not raised the issue, I have also considered whether the putative ex post facto violation raises an issue of fundamental fairness sufficient to invalidate the appeal/2255 waiver. In view of the decisions from the Court of Appeals indicating that the protection of the Ex Post Facto Clause can be waived, United States v. Riggi, supra, 649 F.3d at 147-48; United States v. Waters, 23 F.3d 29, 36 (2d Cir. 1994); see also Martinez v. Evans, 351 F. App'x 186, 188 (9th Cir. 2009), I conclude that fundamental fairness does not warrant voiding the waiver.

agreement was otherwise validly entered into, the appeal/2255
waiver in the plea agreement is enforceable.[8]

C.   Remaining Claims

        Petitioner's remaining claims consist of the following:
(1) the CHC used to calculate petitioner's sentence was incorrect
and (2) Judge Rakoff should have reduced petitioner's sentence by
the total amount of time petitioner served in connection with the
Florida securities fraud conviction, pursuant to U.S.S.G.
§ 5G1.3(b)(1) (Petition at 17-18).  The Government argues that
these claims, too, should be dismissed as waived or, in the
alternative, as meritless.

        The waiver provision in the plea agreement does bar
petitioner from challenging the accuracy of the CHC.  Petitioner
stipulated in the plea agreement to the CHC he now complains of

---

        [8]Petitioner also argues that counsel was ineffective because
she failed to object at sentencing to Judge Rakoff's application
of Booker to pre-Booker offenses (Petition at 19).  Because there
is not the remotest suggestion in petitioner's submissions con-
necting this remaining specification of ineffective assistance to
the plea negotiation process, it also cannot invalidate the
appeal/2255 waiver.  And, even if I were to consider this claim
on the merits, it would fail because petitioner cannot show that
counsel's failure to object was defective.  The Second Circuit
flatly rejected the notion of an "ex post facto claim based on
the remedial holding of Booker" in United States v. Vaughn, 430
F.3d 518, 525 (2d Cir. 2005) (citations omitted) (Sotomayor, then
Cir. J., now S. Ct. J.).

(Ex. D to Opp'n at 4).  Moreover, the plea agreement expressly
forbids petitioner from challenging a sentence at or below the
stipulated Guidelines sentence of eighteen years, regardless of
the Guidelines analysis the court employed to reach that sentence
(Ex. D to Opp'n at 7).  In light of these clear provisions,
petitioner's claim pertaining to the calculation of the CHC cannot
survive the waiver.[9]

    The analysis differs with respect to the claim that
Judge Rakoff should have given petitioner more credit for the time
served in connection with petitioner's securities fraud convic-
tion.  Petitioner specifically reserved the right in the plea
agreement to seek a lower sentence on the basis of the time he
served for the Florida securities fraud conviction (Ex. D to Opp'n
at 5).  Further, the Second Circuit has held that a waiver of the
right to attack a sentence within a stipulated Guidelines range
does not preclude a defendant from filing a collateral attack

---

    [9]In any event, this claim is procedurally barred because
petitioner did not raise it in his direct appeal.  See Cole v.
United States, 00 Cr. 105 (RPP), 04 Civ. 2716 (RPP), 2005 WL
217019 at *3 (S.D.N.Y. Jan. 27, 2005) (Patterson, D.J.).  Even if
petitioner had raised it on direct appeal and I considered it on
the merits, it would still fail.  Petitioner erroneously relies
on charges from his initial indictment, as opposed to the charges
agreed to in the superseding information, to dispute the calcula-
tion of the CHC (see Petition at 17; Petitioner's Response to
Opp'n at 21).  Contrary to petitioner's assertion, the Florida
conviction was properly considered in determining the CHC.

asserting that a sentence should have been imposed to run concur-
rently with another sentence.  See United States v. Stearns, 479
F.3d 175, 178 (2d Cir. 2007) ("Our case law makes clear that,
although [petitioner] explicitly waived his right to appeal the
length of his sentence, he did not waive the right to appeal the
decision to impose that sentence partially concurrently with his
state sentence."); United States v. Brown, 152 F. App'x 55, 57 n.1
(2d Cir. 2005) ("Although pursuant to his plea agreement, [peti-
tioner] 'waive[d] the right to appeal, modify . . . and collater-
ally attack any sentence imposed by the Court which falls within
or is less than' the Guidelines range, such a waiver does not
preclude him from raising on appeal the propriety of a consecutive
sentence."); United States v. Williams, 260 F.3d 160, 164-65 (2d
Cir. 2001) ("[A]lthough [petitioner] waived his right to appeal
the length of the stipulated sentence, he did not waive a claim on
appeal that the sentence should have been imposed concurrently
with his state sentence."); United States v. Brown, 232 F.3d 44,
48 (2d Cir. 2000) (per curiam) ("[Petitioner] has not, however,
waived his right to appeal on the basis of his second argument
because his waiver did not encompass his right to appeal the
district court's application of U.S.S.G. § 5G1.3."); United States
v. Velasquez, 136 F.3d 921, 923 n.1 (2d Cir. 1998) (per curiam);
but see United States v. Morales, 253 F. App'x 108, 110 (2d Cir.

2007) (Where parties unambiguously agreed that petitioner would not appeal the imposition of consecutive sentences, petitioner was barred from arguing for concurrency.).  Accordingly, petitioner's claim that he should have received greater credit based on the securities fraud conviction is not barred by the waiver.

Despite surviving the waiver, petitioner's failure to raise the claim on direct appeal constitutes a procedural default.

> If . . . a habeas petitioner asserts a claim that he did not raise on direct review, that claim will be considered procedurally defaulted and thus ineligible for review in a Section 2255 proceeding unless the petitioner "can first demonstrate either 'cause' [for the default] and actual 'prejudice,' or that he is 'actually innocent.'"  Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted).  To satisfy the "cause" requirement, the petitioner must show circumstances "external to the petitioner, something that cannot be fairly attributed to him."  Coleman v. Thompson, 501 U.S. 722, 753 (1991).  Attorney ignorance or error is not "cause" for a procedural default unless the error rises to the level of constitutional ineffectiveness.  Id. at 752-55.  To establish "prejudice," the petitioner must establish that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Rodriguez v. Mitchell, 252 F.3d 191, 203 (2d Cir. 2001) (citations omitted).  Finally, to establish actual innocence, the petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousely, 523 U.S. at 623 (internal quotation marks and citations omitted).

Cole v. United States, 00 Cr. 105 (RPP), 04 Civ. 2716 (RPP), 2005 WL 217019 at *3 (S.D.N.Y. Jan. 27, 2005) (Patterson, D.J.); see Garafola v. United States, supra, 909 F. Supp. 2d at 326.  Because

petitioner has not alleged cause and prejudice, nor made a showing of actual innocence, the claim should be dismissed as procedurally defaulted.

Even if I were to consider the merits of the claim, it would fail on the merits. Section 5G1.3 governs the imposition of a sentence on a defendant who is subject to an undischarged term of imprisonment. Section 5G1.3(b)(1) states, in part:

> If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . and that was the basis for an increase in the offense level for the instant offense . . ., the sentence for the instant offense shall be imposed as follows:
>
> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

In order for subsection (b) to apply, petitioner must have been subject to an undischarged term of imprisonment, and the conduct underlying that sentence must have been relevant and been fully taken into account in the determination of petitioner's offense level. See Witte v. United States, 515 U.S. 389, 405 (1995) ("If a defendant is serving an undischarged term of imprisonment 'result[ing] from offense(s) that have been fully taken

into account [as relevant conduct] in the determination of the
offense level for the instant offense,' § 5G1.3(b) provides that
'the sentence for the instant offense shall be imposed to run
concurrently to the undischarged term of imprisonment.'"), citing
U.S.S.G. § 5G1.3(b).  Here, petitioner does not allege that he was
subject to an undischarged term of imprisonment when Judge Rakoff
imposed his sentence.  The record indicates that petitioner's
Florida sentence had been fully completed by then (see, e.g., Ex.
D to Opp'n at 5 (Petitioner has "already completed the [Florida]
sentence."); Ex. E to Opp'n at 12 (Petitioner "has already served"
the sentence in Florida.).  On that basis alone, there is no merit
to this claim.  Further, the superseding information did not take
into account the conduct underlying petitioner's Florida convic-
tion in determining petitioner's offense level (see Ex. D to Opp'n
at 3).  Thus, even if petitioner had not fully served the Florida
sentence, U.S.S.G. § 5G1.3(b) would not apply.  See United States
v. Brown, supra, 232 F.3d at 49 (District court was correct in not
applying § 5G1.3(b) where undischarged sentence for unrelated drug
conviction had not been "fully taken into account.").

        Because petitioner asserts no other basis for challeng-
ing Judge Rakoff's decision, and there is no evidence that Judge
Rakoff exceeded his discretion in fashioning a partially concur-
rent sentence, petitioner's claim that he should have received

48

credit for all the time he served on the Florida sentence is meritless. "Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings." Setser v. United States, --- U.S. ---, 132 S. Ct. 1463, 1468 (2012), quoting Oregon v. Ice, 555 U.S. 160, 168-69 (2009). This is true even within the context of U.S.S.G. § 5G1.3(b). United States v. Juju Jiang, 471 F. App'x 85, 86 (2d Cir. 2012) ("Even if [defendant's] Queens conviction were considered an undischarged sentence under § 5G1.3(b), the District Court was justified in exercising its discretion not to adjust [defendant's] sentence to account for the time [defendant] had already served in connection with the Queens conviction."), citing United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) ("We will instead set aside a district court's substantive determination only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" (citation omitted)).

Accordingly, petitioner's claim should be dismissed as procedurally defaulted or, in the alternative, as meritless.

IV.  Conclusion

        For all the foregoing reasons, I respectfully recommend that the Petition be dismissed.

        In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.  28 U.S.C. § 2253.  To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

        I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

V.   <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See also</u> Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Rakoff.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v.

Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v.

Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         January 16, 2014

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Philip Abramo
No. 17652-050
FCI Allenwood Medium
Federal Correctional Institution
P. O. Box 2000
White Deer, Pennsylvania  17887

Steve C. Lee, Esq.
Assistant United States Attorney
Southern District of New York
1 St. Andrew's Plaza
New York, New York 10007